UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

KEVIN WILLIAMS,

           Plaintiff,                        Case No. 2:16-cv-221

v.                                        Honorable Janet T. Neff

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

           Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on grounds of immunity and failure to state a claim.

**Factual Allegations**

Plaintiff Kevin Williams presently is incarcerated with the Michigan Department of Corrections (MDOC) at Marquette Branch Prison (MBP). The actions about which he complains allegedly occurred at MBP and four other prisons: Baraga Correctional Facility (AMF); Alger Correctional Facility (LMF); Chippewa Correctional Facility (URF); and Kinross Correctional Facility (KCF). Plaintiff sues the MDOC, Keefe Commissary Network Sales (Keefe), and the MDOC Manager of Grievance Appeals Richard D. Russell. Plaintiff also sues the following MBP officials: Warden Robert Napel; Storekeeper J. Pancheri; Storekeeper Supervisor Steven Palm; and the unknown account technician and classification director (Unknown Part(y)(ies) #2). In addition, he sues the following AMF officials: Warden Shane Place; Classification Director K. Adams; Chip LaClaire; Warehouse Supervisor Tom Beggs; Prisoner Counselor (unknown) Bessenger; and Account Technician T. Minton. At LMF, Plaintiff sues the following officials: Warden Catherine S. Bauman; and Classification Director (unknown) Hoffman. Further, Plaintiff sues three employees at URF: Warden Jeffery Wood; Account Technician Joyce L. Ross; and Assistant Resident Unit Supervisor (ARUS) (unknown) Psonbright. Finally, he sues these KCF employees: the unknown Account Technician and Warehouse Supervisor (Unknown Part(y)(ies) #1); and the unknown store clerk (Unknown Part(y)(ies) #3).

Plaintiff complains about events that allegedly occurred between April 8, 2011, and October 30, 2015, while Plaintiff apparently was housed at five different facilities. Plaintiff provides few details about his claims, though he alleges incidents occurred at least 20 times during a five-year period. Plaintiff attaches nearly 300 pages of documents, consisting of a number of kites, medical records, MDOC policies, and four grievances and grievance responses.

In his only relatively detailed set of allegations, Plaintiff complains that, on September 25, 2015, while he was housed in segregation at AMF, he sent an institutional letter requesting placement on the indigent list for October 2015.[1] Adams sent Plaintiff a receipt, indicating that his request had been forwarded to the business office for approval for indigent status for the following month. Plaintiff apparently was approved, and he received an indigent store order form from Defendant Bessemer, which Plaintiff completed in the first week of October 2015 and returned to Defendant Bessemer. The form was transferred to Defendants Beggs and LaClaire for faxing to Keefe for packaging and delivery. Plaintiff complains that he never received his October commissary order, though Keefe shipped other prisoner orders on October 29 and October 30, 2015,. Apparently, Keefe represented in email correspondence with Defendant Bessemer that all remaining indigent store items order for the month of October had been shipped in the October 30, 2015 shipment. On November 20, 2015, Warden Place, in a grievance response, stated that Keefe had advised the prison that no indigent store orders would be processed for October because, as of the date of inquiry, the month had ended.[2] Plaintiff alleges that either Keefe or the AMF Defendants acted either maliciously or with deliberate indifference to Plaintiff's basic needs when they failed to ship or to deliver his commissary order. Plaintiff also asserts that the warden became personally involved by denying the grievance, thereby permitting the violation of the Eighth and Fourteenth Amendments. He also alleges that Defendants must have been retaliating against him for filing

---

[1]According to MDOC policy, a prisoner may apply for indigent status if neither his account balance nor his spendable balance plus receipts equals or exceeds $11.00 in a calendar month, subject to certain exceptions. MICH. DEP'T OF CORR., Policy Directive 04.02.120 ¶ A. A qualified prisoner is entitled to be placed on the list for a one-month period and must reapply the next month. MICH. DEP'T OF CORR., Policy Directive 04.02.120 ¶ C.

[2]A prisoner eligible for an indigent loan is eligible for a loan up to $11.00 per month solely "to purchase of mandatory health care products, over-the-counter personal care products, and hygiene products . . . ." MICH. DEP'T OF CORR., Policy Directive 04.02.120 ¶ D. "Any portion of an indigent loan not used by a prisoner during the one-month period for which it was received shall not be carried forward." *Id.* ¶ F.

grievances. In addition, Plaintiff alleges that Defendant Bessemer did not provide him with hygiene supplies during the month of November, despite the fact that Plaintiff did not receive his October commissary order.

Plaintiff does not specifically identify other instances in which he did not receive his indigent order. His remaining allegations consist solely of summary statements, referencing grievances attached to the complaint and naming Defendants only in their relationship to the handling of such grievances. An example of Plaintiff's allegations is the following extraordinary long, run-on sentence – the only place Plaintiff names most of the Defendants he has sued:

> Named herein where on 6/21/13 Placheri [sic], STK, Steven Palm, STK Supv., Kinross Store Clerk, G-Unit ARUS Listen, Classification Director, Acct. Tech. and Warden Robert Napel's continued those same deliberate indifference under the color of law and became personally involved on 6/21/13 to 7/12/13, throughout Plaintiff's stay at MBP, (See, Exh. I, G, att.) as well as, Classification Director, Mr. Hoffman, Storekeeper, and Storekeeper Supervisor, Acct. Tech., Pine Unit ARUS and RUM, Kinross Store Clerk and Warden Catherine S. Bauman, who also continued those same deliberate indifference under the color of law and became personally involved on 9/7/12, and ongoing through-out the Plaintiff stay at LMF (See, Exh. G att.) and was further executed and continued by Kinross Store Clerk, Classification Director, Steamboat Unit Counsel McLeod, Acct. Tech. Joyce L. Ross, ARUS and/or RUM Psonbright, Storekeeper, and Storekeeper Supervisor, and Warden Jefferey Wood, who also continued those same deliberate indifferences under the color of law and became personally involved on 12/8/14, 12/29/14, 11/26/14, 12/22/14, 1/27, 12, and 2/3/15 (See, Exh. J, G, att.) and ongoing throughout the Plaintiff stay at URF, where even during the Plaintiff stay at (LMF), where Mr. Williams purchased indigent store order Aleve pain pills/medication was thrown away in the garbage and never returned (See, Exh. M att.), for which Catherine Bauman allowed to happen because of her failure to remedy, and alter her staff's disastrous behavior after being notified in Step II grievance sent to her officer directly identifying all parties involved and showing that the Plaintiff was found no guilty concerning an alleged misuse of medication but was never reimbursed, repurchased or ordered and provided to the Plaintiff in retaliation because of the grievances he had prepared against her and her staff.

(Compl., ECF No. 1, PageID.15-16.)[3]

Plaintiff contends that the October 2015 failure to deliver his indigent commissary order, together with other unspecified failures to deliver his orders on 20 occasions during the preceding five years, caused Plaintiff to suffer bleeding gums, rashes, athletes foot, facial sores, severe gout pains, severe chest pains, and severe joint pains, because he could not get over-the-counter pain medications and hygiene supplies.

For relief, Plaintiff seeks compensatory and punitive damages and permanent injunctive relief.

## Discussion

I.    Sovereign Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has

---

[3] The recited allegations appear to reference an incident described in certain attachments during which Plaintiff's Aleve pain reliever, together with a number of bottles of prescription medication that appeared to be unauthorized, was confiscated. (Pl.'s Ex. M, ECF No. 1-6, Page Id.288-292.) Plaintiff was charged with a misconduct ticket, of which he was found not guilty. (*Id.*) Plaintiff filed grievance number AMF 1305 0719 12F, because his Aleve was not returned to him. The incident appears to have occurred on April 12, 2013.

specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

      II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is

entitled to relief." *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Lack of Allegations

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also*

*Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendant Milton in the body of his complaint. His allegations against Milton therefore fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### B. Supervisory Liability

Although Plaintiff's allegations are vague against most Defendants, his allegations against Defendants Place, Bauman, Woods, Napel, and Russell appear to rest solely on their failures to supervise their subordinates and failures to resolve his grievances in the manner he would prefer. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Place, Bauman, Woods, Napel, and Russell engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim.

### C.      Conclusory Allegations

Plaintiff's allegations against Defendants Hoffman, Unknown Parties #1, Pancheri, Palm, Unknown Parties #2, Ross, Psonbright, and Unknown Parties #3 are limited to their inclusion in a one-sentence declaration that they "continued" the "deliberate indifference" of other Defendants who did not ensure that Plaintiff received his commissary items in some month in a five-year period. (Compl., ECF No. 1, PageID.15-16.) Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-69; *Twombly*, 550 U.S. at 555. Plaintiff's conclusory allegations "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Plaintiff therefore fails to state a claim against Defendants Hoffman, Unknown Parties #1, Pancheri, Palm, Unknown Parties #2, Ross, Psonbright, and Unknown Parties #3.

### D.      Statute of Limitations

Plaintiff alleges that he has been deprived of necessary commissary items for five years, between April 2011 and November 2015. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d

44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[4]

A significant portion of Plaintiff's complaint is untimely. He asserts claims that arose between April 2011 and November 2015. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, some of his claims accrued as early as 2011. However, Plaintiff did not file his complaint until October 2016,[5] well past Michigan's three-year limit for claims that accrued prior to October 1, 2013. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

---

[4]28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

[5]Although Plaintiff signed his complaint on January 13, 2016, the complaint was not received by this Court until October 12, 2016. While the prison mail-box rule generally allows the Court to presume that the complaint was filed at the time a plaintiff signs the complaint, *see Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008), such a presumption is not warranted when nine months have passed between the date of signing and the date of receipt by this Court. That is particularly true where, as here, the postal marks on the envelope indicate that the complaint and attachments were mailed on October 10, 2016. It therefore appears that any alleged conduct that occurred prior to early October 2016 is time-barred.

As a consequence, to the extent that Plaintiff raises alleged harms that occurred prior to October 1, 2013, those claims will be dismissed for failure to state a claim because they are time-barred. *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . .").[6]

### E.  Eighth Amendment

Plaintiff alleges that Defendants collectively violated the Eighth Amendment by failing to ensure that he received his commissary orders in every month over the last five years. He broadly asserts that the inability to receive commissary purchases in every month led him to experience pain, because he lacked over-the-counter pain medications, and deteriorated dental health, apparently because he did not receive one or more unspecified dental hygiene item.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

---

[6] Among those claims that are time-barred is Plaintiff's implicit claim that unspecified Defendants confiscated his Aleve on April 11, 2013 and failed to return it.

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). *But see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).

Although Plaintiff makes sweeping allegations about ongoing deprivations at multiple facilities over a five-year period, he describes with specificity only one occasion on which he did

not receive his commissary items: October 2015. Plaintiff's failure to receive commissary items for a one-month period amounts to a claim about a temporary inconvenience. An inability to purchase hygiene products for one month does not create an objectively serious risk to a prisoner's health or safety. Moreover, Plaintiff fails to allege that any named Defendant either acted intentionally to deprive him of the desired items or was subjectively aware of his serious need for those items. Instead, his claim appears to rest on mere negligence. Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). As a consequence, Plaintiff's allegation about the October 2015 failure to provide his commissary items fails to state and Eighth Amendment claim.

Given that Plaintiff's only specific allegations against Defendants Keefe Commissary Network Sales,[7] Adams, Bessemer, Beggs, and LaClair involved the October 2015 incident, Plaintiff's Eighth Amendment claims against those Defendants will be dismissed.

---

[7]Keefe Commissary Network Sales is a private company. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). For purposes of this opinion, the Court has assumed without deciding that Defendant Keefe is a state actor subject to suit under § 1983.

### F. Retaliation

Plaintiff makes the conclusory allegation that Defendants' actions in preventing him from receiving his commissary items in a given month were taken in retaliation for his having filed grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004)

(without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that any Defendants retaliated against him because he filed a grievance. Plaintiff therefore fails to state a retaliation claim.

### G.    Due Process

Plaintiff alleges that he was deprived of his right to receive commissary items as an indigent prisoner without due process of law. Plaintiff has not specified whether he intends to raise a procedural due process claim or a substantive due process claim. The Court will discuss each in turn.

#### 1.    Procedural due process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable

liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff's sole complaint is that he did not receive his commissary items during a particular month. No basis exists for concluding that the deprivation of one month's commissary items is atypical or significant.

Moreover, assuming that Plaintiff intends to allege that he had a property interest in receiving the items, and further assuming without deciding that such a property interest exists, any due process claim based on the taking of that property would be barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and

prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

For all of these reasons, Plaintiff's procedural due process claims will be dismissed.

2. Substantive due process

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process

prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his medical claims. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Similarly, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that

source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Consequently, Plaintiff's substantive due process claim will be dismissed.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on grounds of immunity and failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:  November 4, 2016              /s/ Janet T. Neff
                                      Janet T. Neff
                                      United States District Judge